

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

Kathleen Swindell, Celine D. Olsen,
Clare Loiacono, and Shawn Hardwick,

           Plaintiffs,

-v.-                                            1:03-CV-00770
                                                    (NPM)

New York State Department of
Environmental Conservation, Eric
Roderick, John Ellithorp, Scott
Florence, Walter Heinrich, and
Darren Holmes,

           Defendants.

---

APPEARANCES:                   OF COUNSEL:

THOMAS MILLER
Attorney for Plaintiffs
P.O. Box 11472
Albany, New York 12211

ELIOT SPITZER, Attorney          MICHAEL G. McCARTIN,
  General of the State of New York    Assistant Attorney General
Attorney for Defendants
Office of the New York State Attorney
 General
The Capitol
Albany, New York 12224

Neal P. McCurn, Senior District Judge

# MEMORANDUM-DECISION and ORDER

## I. Introduction

Plaintiffs, Kathleen Swindell ("Swindell"), Celine A. Olsen ("Olsen"), Clare Loiacono ("Loiacono"), and Shawn Hardwick ("Hardwick") (collectively, "Plaintiffs") originally filed this civil rights action against the New York State Department of Environmental Conservation ("DEC"), Eric Roderick ("Roderick"), John Ellithorp ("Ellithorp"), Scott Florence ("Florence"), Walter Heinrich ("Heinrich") and Darren Holmes ("Holmes"). Prior to commencement of the present motion, Defendants DEC, Ellithorp, Florence and Holmes were dismissed from this action with prejudice. See Dkt. Nos. 17, 22 & 27.

Plaintiffs' complaint ("the Complaint") sets forth various causes of action for constitutional violations as predicates to claims pursuant to 42 U.S.C. § 1983, as well as several tort claims pursuant to New York state law as follows: Count I sets forth a claim by all plaintiffs for violations of their Fourth Amendment right to be free from unreasonable seizures; Count II sets forth a state tort claim by all plaintiffs for false arrest and imprisonment; Count III sets forth a claim by Swindell, Olsen and Loiacono for excessive force in violation of the Eighth Amendment; Count IV sets forth a state tort claim by Swindell, Olsen and Loiacono for battery; Count V sets forth a claim by Swindell, Olsen and Loiacono for deprivation of their right to due process in violation of the Fourteenth Amendment; Count VI sets forth a state tort claim by Swindell, Olsen and Loiacono for malicious prosecution; and Count VII sets forth a state tort claim by all plaintiffs for negligence. In his Answer, Roderick denied liability on each of these claims, and further set forth a counterclaim against Swindell, Olsen and

1

Loiacono for assault. See Def. Roderick's Ans. & Countercl., Dkt. No. 18.

Presently before the court is a motion for summary judgment by defendants Roderick and Heinrich ("Defendants") against Plaintiffs on the entire Complaint. Oral argument was heard regarding the pending motion in Syracuse, New York on January 5, 2005.

The sole basis for Defendants' motion is that they are entitled to qualified immunity. In their opposition papers, Plaintiffs concede that Heinrich is entitled to qualified immunity on all claims against him and therefore, the entire action as against Heinrich should be dismissed. Further, Plaintiffs concede that Roderick is entitled to qualified immunity for his actions in arresting Hardwick and therefore, the § 1983 Fourth Amendment and state law false arrest and imprisonment claims by Hardwick against Roderick should be dismissed.

Also in their opposition papers, Plaintiffs argue that Roderick is not entitled to qualified immunity on Hardwick's excessive force claim. However, it is clear from the Complaint that the only claims set forth by Hardwick are Counts I and II (§ 1983 Fourth Amendment and state law false arrest and imprisonment claims) and Count VII (negligence). At oral argument, counsel for Plaintiffs conceded that no excessive force claim is set forth by Hardwick, and that all claims by Hardwick should be dismissed.

In addition, at oral argument, counsel for Plaintiffs conceded that there is no evidence in the record to support a § 1983 excessive force or state law battery claim against Roderick by Swindell, and therefore, Swindell's claims under Counts III and IV of the Complaint should be dismissed.

Accordingly, the court granted summary judgment to defendant Heinrich on the entire Complaint and further granted summary judgment to defendant Roderick

as to all claims against him by plaintiff Hardwick and as to Counts III and IV of the Complaint insofar as they are alleged against him by plaintiff Swindell. The court reserved decision as to whether Roderick is entitled to qualified immunity on the remaining claims against him.

## II.   Factual Background

This action arises out of events that took place at the Golden Beach State Campground ("the Campground") near Raquette Lake, New York in July 2002, and the resulting arrest and detention of Plaintiffs by Roderick, a DEC Environmental Conservation Officer ("ECO"). Because Hardwick's claims have been dismissed, the court will only discuss the facts of this case as they relate to the remaining plaintiffs, Swindell, Olsen and Loiacono.

At 1:00 a.m. on July 22, 2002, Roderick arrested Swindell, Olsen and Loiacono. All three were ticketed for the following offenses: Violation of Quiet Hours pursuant to 6 NYCRR § 190.7(a)(12); Refusing Lawful Direction of a DEC Employee pursuant to 6 NYCRR § 190.7(a)(8); and Resisting Arrest pursuant to N.Y. Penal L. § 205.30. See Ex. N to Decl. of Michael McCartin, Aug. 13, 2004, Dkt. No. 35. In addition, Swindell received an appearance ticket for Escape, Third Degree pursuant to New York Penal Law § 205.05.

Swindell, Olsen and Loiacono (hereinafter "Plaintiffs") are sisters who arrived at the Campground on July 19, 2002 as part of a larger group of family members gathering for a vacation and family reunion. Plaintiffs were aware that the Campground enforces "quiet hours" from 10 p.m. until 7 a.m. At approximately 10:15 p.m. on the evening of July 21, 2002, Roderick and Park Ranger, Darin Homer ("Homer") told Plaintiffs and others at Swindell's campsite that they were being too loud and that they must quiet down and disburse to their

3

own campsites. Roderick was wearing his law enforcement uniform at the time, and Olsen later testified that they assumed he was some type of police officer. Swindell later testified that when Roderick told them to disburse, he said, "I told you to leave the site; if people aren't gone in 20 minutes when I get back, you will be seeing a judge in Piseco." Dep. of Kathleen Swindell, June 4, 2004, at 20:16-19, Ex. A to McCartin Decl., Dkt. No. 35. Twenty minutes later, when Roderick returned to the campsite, Plaintiffs had disbursed.

A little later in the evening, Roderick began his one-hour journey home, leaving Homer to patrol the Campground by himself. At around midnight, Plaintiffs and a friend, Anne Harvey, were sitting on a picnic table by the beach when Homer approached them and told them they were making too much noise and that he had received complaints from other campers. Immediately after confronting Plaintiffs, Homer made a radio call for a law enforcement officer to come and enforce the quiet hours regulation against Plaintiffs. When Roderick returned to the Campground, Homer informed him that Plaintiffs had been too loud in violation of the quiet hours regulation, and that they had refused to comply with his demands to be quiet, show identification, or disburse.

After Homer made his report to Roderick, the two men encountered Plaintiffs on a path leading to the Campground shower building. According to Roderick, the Plaintiffs were loudly shouting and laughing, again violating the quiet hours regulation. See Dep. of Eric Roderick, April 22, 2004, at 44:7-45:1, Ex. E to McCartin Decl., Dkt. No. 35. However, Olsen testified that they were walking along quietly. See Dep. of Celine A. Olsen, May 27, 2004, at 37:3-13, Ex. B to McCartin Decl. Moreover, Homer testified that the only reason Roderick stopped Plaintiffs at that time was because Homer identified them as the women

4

who were making noise on the beach earlier that evening. See Dep. of Darren Homer, June 9, 2004, at 61:13-62:11, Ex. G to McCartin Decl.

Roderick told Plaintiffs to stop because he was going to write them a ticket for a noise violation. Olsen replied, "Okay, we'll get a ticket but first we have to go to the bathroom." Olsen Dep. at 38:2-4, Ex. B to McCartin Decl., Dkt. No. 35. Approximately 15 minutes later, Plaintiffs emerged from the shower building to find Roderick and Homer waiting for them. Roderick again informed Plaintiffs that they needed to come with him because he was going to give them a ticket for violating the quiet hours regulation.

According to Olsen, Roderick was "crowding her" as she and her sisters were walking with him toward "the booth" where he was going to issue their tickets. Olsen then said to Roderick, "Don't stand so close to me" to which he replied, "I will be touching you in a minute." See Olsen Dep. at 39:8-17, Ex. B to McCartin Decl., Dkt. No. 35. According to Olsen,

> I said, "No, you won't", and I put my hands (sic) and took two steps back. And he grabbed my arm and yanked it up behind my back. I had a water jug in my hand. He yanked it up behind my back and put a cuff on it behind my back. And I'm kind of flailing around. And he said, "You're resisting arrest." So I immediately stopped moving. That's when I realized that I'm under arrest; that I must be being arrested.

Id. Plaintiffs admit that after Olsen told Roderick not to touch her, she swung her right hand and arm towards him and struck him on the left shoulder. See Pls.' Reply to Roderick's Countercl. at ¶ 1, Ex. L to McCartin Decl.; Roderick's Counterclaim at ¶ 18. In less than one minute, Roderick was able to have both of Olsen's hands cuffed behind her back. Roderick then pulled the handcuffs up behind Olsen's back in order to inflict sufficient pain to make her compliant and

5

cause her to move toward his patrol vehicle.

In the meantime, while the struggle between Olsen and Roderick was taking place, Loiacono started yelling for someone to call 9-1-1 because "the guy's going to take us for a ride." Dep. of Clare Loiacono, June 4, 2004, at 21:22-22:4, Ex. C to McCartin Decl., Dkt. No. 35. Roderick told Loiacono, "I am the police" and she replied, "No, you are not." Id. As Roderick was moving Olsen toward his patrol car, he also attempted to handcuff Loiacono. Loiacono admits that she resisted Roderick's attempts to handcuff her, and that Roderick was not able to handcuff her without assistance from Homer. See id. at 25:7-29:18, Ex. C to McCartin Decl., Dkt. No. 35. According to Loiacono, Roderick placed the handcuffs on her wrists so tightly that she had bruising and swelling, causing her to wear a splint on one wrist.

Also, at some point after the altercation between Roderick and Olsen commenced, Olsen told Swindell to run. See Olsen Dep. at 48:13-16, Ex. B to McCartin Decl.; Loiacono Dep. at 25:12-19, Ex. C to McCartin Decl.; Swindell Dep. at 44:19-21, Ex. A to McCartin Decl., Dkt. No. 35. Thereafter, according to Swindell, she left the scene "to go get help." Swindell Dep. at 43:5-6.

Sometime later that morning, Loiacono and Olsen received appearance tickets from Roderick, their handcuffs were removed, and they were allowed to return to their campsites. Roderick also went to Swindell's campsite later that morning to deliver her appearance tickets. Eventually, all of the charges against Plaintiffs were dismissed by the Hamilton County District Attorney, who refused to prosecute the case.

At some point after leaving the Campground early that morning, Roderick noticed pain and swelling in his left hand. See Roderick Dep., 73:20-74:10, Ex. E

6

to McCartin Decl., Dkt. No. 35. Thereafter, Roderick informed his supervising lieutenant of same, and was directed by said lieutenant to receive medical treatment for his injury. Later in the day on July 22, 2002, Roderick signed felony complaints against Olsen and Loiacono, charging each with assault in violation of the New York Penal Law. See Ex. T to McCartin Aff., Dkt. No. 35.

### III. Discussion

### A.   Summary Judgment Standard

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82 (2d Cir. 2004). "[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought[.]" See Security Ins., 391 F.3d at 83, citing Anderson V. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986). While the initial burden of demonstrating the absence of a genuine issue of material fact falls upon the moving party, once that burden is met, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial," see Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002), citing Fed. R. Civ. P. 56(c), by a showing sufficient to establish the existence of every element essential to the party's case, and on which that party will bear the burden of proof at trial, see Peck v. Public Serv. Mut. Ins. Co., 326 F.3d 330, 337

(2d Cir. 2003), cert. denied, 124 S.Ct. 540 (2003).

### B. Qualified Immunity

Roderick, the sole remaining defendant in this action, seeks summary judgment on the claims against him on the basis of qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). In deciding whether Roderick should be granted qualified immunity, the court must first consider whether the facts alleged, when taken in the light most favorable to Plaintiffs, show that Roderick's conduct violated a Constitutional right. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001). If that question is answered in the affirmative, the next step is to determine whether the right was clearly established, to wit, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202, 121 S.Ct. at 2156. Therefore, in deciding that a defendant is entitled to summary judgment on qualified immunity grounds, the court must find that "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995).

### C. Section 1983 and State Law False Arrest Claims

In order to prevail on a claim under § 1983, a plaintiff must establish the violation of a right secured by the Constitution and laws of the United States, and

8

that the violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55 (1988). A claim for false arrest or imprisonment, brought pursuant to § 1983 for violation of the Fourth Amendment right to be free from unreasonable seizures, is substantially the same as such a claim brought pursuant to state law. See Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003) (internal citations and quotations omitted). In order to establish a claim for false arrest or imprisonment under § 1983 and New York law, a plaintiff must show that the defendant intentionally confined her without her consent and without justification. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause is a justification for, and a complete defense to, a claim for false arrest and imprisonment under both § 1983 and New York law. See Weyant, 101 F.3d at 852.

"[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts or circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Id. An arrest without a warrant is presumptively invalid, and the arresting officer bears the burden of proving that such an arrest was reasonable. See Roberts v. City of New York, 753 F.Supp. 480, 483 (S.D.N.Y. 1990). The relevant inquiry here to determine whether Roderick had probable cause to arrest Plaintiffs is whether a reasonable officer could conclude that Plaintiffs committed a crime, based on the facts available to Roderick at the time of the arrest and immediately before it. See Caldarola v. Calabrese, 298 F.3d 156, 161-162 (2d Cir. 2002).

Here, both parties agree that Roderick had probable cause to arrest Plaintiffs based upon Park Ranger Homer's report that Plaintiffs violated the quiet

9

hours regulation earlier during the late evening hours of July 21, 2002. See Hotaling v. LaPlante, 167 F.Supp.2d 517, 522 (N.D.N.Y. 2001) (an officer may rely on the statements of witnesses, including those of another officer, when making a probable cause determination). Nonetheless, Plaintiffs argue that because Roderick arrested them for a violation of the quiet hours regulation which allegedly occurred at 1:00 a.m. on July 22, 2002, and because there is a question of fact as to whether such a violation occurred at that time, Roderick did not have probable cause to arrest them.

It is true that a question of fact exists as to whether Plaintiffs were loudly shouting and laughing when Roderick encountered them on their way to the shower building, as he claims they were, because both Homer and Olsen testified to the contrary. However, Roderick contends that he had probable cause to arrest Plaintiffs based on Homer's report of their earlier quiet hours violation, and the fact that he cited a later quiet hours violation as the basis for the arrest at the time of arrest is irrelevant. As the Supreme Court recently reiterated, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." Devenpeck v. Alford, --- U.S. ---, 125 S.Ct. 588, 593 (2004) (citations omitted). In Devenpeck, the Court rejected as inconsistent with this rule the Ninth Circuit Court of Appeals' "closely related" requirement, which mandated that the offense establishing probable cause must be "closely related" to, and based on the same conduct as, the offense identified by the officer at the time of arrest. See id. at 594. The Court expressly stated that an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Id. As the parties agree, Roderick had probable cause to arrest Plaintiffs for their earlier quiet hours

10

violation, and thus it is immaterial that the appearance tickets given to Plaintiffs cited alternative bases for their respective arrests.

Having determined that Plaintiffs' arrests were supported by probable cause and thus were reasonable within the confines of the Fourth Amendment, Roderick's qualified immunity defense need not be addressed further. Moreover, the probable cause determination provides Roderick with a complete defense to Plaintiffs' § 1983 and state law false arrest and imprisonment claims. Accordingly Roderick's motion for summary judgment as to Counts I and II of the Complaint is granted.

### D.     Section 1983 Excessive Force and State Law Battery Claims

Initially, it should be noted that while the Complaint sets forth a § 1983 claim for excessive force in violation of the Eighth Amendment, said claim is more properly brought as a violation of Plaintiffs' Fourth Amendment rights, as the alleged incidents of force each took place in effecting an arrest. See Graham v. Connor, 490 U.S. 386, 393-394, 109 S.Ct. 1865, 1870-71 (1989). At oral argument, counsel for Plaintiffs conceded this point. Therefore, whether or not Roderick used an excessive amount of force to effect the arrests of Olsen and Loiacono must be determined by applying the reasonableness standard under the Fourth Amendment. Application of such a standard "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396 (internal quotation marks and citations omitted). Moreover, a proper analysis under this standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and

whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. "[H]owever, the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motive." Id. at 397. Consideration of a claim of battery under New York law parallels that of excessive force pursuant to § 1983. See LaLonde v. Bates, 166 F.Supp.2d 713, 718-719 (N.D.N.Y. 2001).

Here, regarding the amount of force used, it is undisputed that after placing handcuffs on Olsen, Roderick then pulled her wrists up behind her back in order to inflict sufficient pain to make her compliant and cause her to move toward his patrol vehicle. It is also undisputed that as a result of being handcuffed, Loiacono experienced bruising and swelling and was required to wear a splint on one wrist.

At oral argument, counsel for Plaintiffs claimed that Olsen and Loiacono were peacefully and passively complying with Roderick's order to accompany him to his patrol car, and that under those circumstances, there was no need for Roderick to place handcuffs on either woman. Counsel further argued that the physical altercations which ensued between Roderick and Plaintiffs were provoked by Roderick unnecessarily. However, such allegations are belied by the evidence on the record before the court. Plaintiffs admit that Olsen swung at Roderick before he attempted to handcuff her. Further, it is undisputed that during Olsen's altercation with Roderick, she told Swindell to run away, and Swindell complied. It is also undisputed that thereafter, Roderick attempted to place handcuffs on Loiacono, but she struggled so much that Homer was required to assist Roderick.

In any event, "[n]either the Supreme Court nor the Second Circuit has established that a person has the right not to be handcuffed in the course of a particular arrest, even if he does not resist or attempt to flee." Soares v. State of Connecticut Dep't of Environmental Conservation, 8 F.3d 917, 922 (2d Cir. 1993). In Soares, as here, the plaintiff was arrested and handcuffed by a DEC officer on charges that he violated a state regulation. The court there reversed an order below denying summary judgment and held that defendant officers were entitled to qualified immunity on plaintiff's excessive force claims as they did not violate a clearly identified right of plaintiff's by using handcuffs. See id. Therefore, it was lawful for Roderick to handcuff Olsen and Loiacono, even if they complied with his efforts to arrest them. Considering the undisputed evidence that Olsen and Loiacono both resisted Roderick's lawful efforts to handcuff them, and that Olsen encouraged Swindell to flee, the amount of force used by Roderick in effecting their arrest was reasonable. At the very least, considering the evidence in a light most favorable to Plaintiffs, no reasonable jury could conclude that it was objectively unreasonable for the Roderick to believe that he was acting in a fashion that did not clearly violate an established federally protected right. Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995). Therefore, Roderick is entitled to qualified immunity on Plaintiffs' § 1983 excessive force and state law battery claims, and accordingly, his motion for summary judgment as to Counts III and IV of the Complaint is granted.

### E. Section 1983 Due Process and State Law Malicious Prosecution Claims

In support of their claims for malicious prosecution and § 1983 substantive due process violations, Plaintiffs allege they "were placed in fear of their liberty,

13

were humiliated and were caused to expend significant sums of money on a criminal defense" as a result of Roderick having filed felony charges against them pursuant to New York Penal Law § 120.05(3). Compl. ¶¶ 32-33, 36. Plaintiffs further contend that Roderick knew said charges were false, but nonetheless conspired with other defendants to cover up same. See id. ¶¶ 32-33, 35-36.

Initially, it should be noted that because Roderick filed felony assault charges against Olsen and Loiacono only, the malicious prosecution and due process claims against him by Swindell on this ground must be dismissed.

A claim for malicious prosecution under New York law is established when a plaintiff proves the following elements: (1) the defendant initiated a criminal proceeding, (2) which terminated in plaintiff's favor, (3) for which there was no probable cause, and (4) and which was initiated with malice. See Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003). Thus, probable cause is a complete defense to a claim of malicious prosecution In New York, just as it is a defense to a false arrest and imprisonment claim. See Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003). Here, Olsen and Loiacono were charged with second degree assault pursuant to New York Penal law § 120.05(3). The elements of such a claim are: (1) defendant caused injury to a police officer; (2) defendant knew that the injured party was a police officer; (3) the officer was performing his lawful duty; and (4) defendant intended to prevent such performance. See People v. Milhouse, 246 A.D.2d 119, 121, 676 N.Y.S.2d 555, 557 (App. Div. 1st Dept. 1998).

It is undisputed that both Olsen and Loiacono struggled with Roderick in the course of their arrests, and the court has previously concluded that said arrests were reasonable. Both Olsen and Loiacono have testified that by struggling, they

14

intended to prevent Roderick from placing handcuffs on them, a duty which the court has found to be lawful. Roderick testified that he was injured by Plaintiffs during the struggle, and Plaintiffs have offered no evidence to the contrary. Considering the above, it is clear that probable cause existed to charge Olsen and Loiacono with assault, and therefore, any claim against Roderick for malicious prosecution regarding such charges must fail.

As for the substantive due process claim, a plaintiff cannot prevail on such a claim unless she shows that the defendants infringed her liberty or property interest, and did so in an arbitrary or irrational manner. See Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 503 (2d Cir. 2001). Further, the defendant must also have acted in such a way as to "shock the conscience." Smith v. Half Hollow Hills Cent. School Dist., 298 F.3d 168, 173 (2d Cir. 2002). One's conduct will only be found to meet this definition where it is "egregious conduct which goes beyond merely offending some fastidious squeamishness or private sentimentalism and can fairly be viewed as so brutal and offensive to human dignity as to shock the conscience." Id. Therefore, Plaintiffs must necessarily establish that Roderick acted in such a way as to "shock the conscience" when he filed charges of felony assault against Olsen and Loiacono. However, such a conclusion would be inconsistent with this court's previous finding that the assault charge was supported by probable cause. By definition, therefore, that action was reasonable and cannot now be deemed irrational. For this reason, the substantive due process claim must fail, and the court need not address whether Plaintiffs were deprived of a liberty or property interest.

Accordingly, Roderick's motion for summary judgment as to Plaintiffs' § 1983 due process and malicious prosecution claims set forth in Counts V and VI

15

of the Complaint are granted.

### F. Remaining State Law Claims

Remaining for the court's consideration are Plaintiffs' negligence claim against Roderick, and Roderick's counterclaim against Plaintiffs for assault. The Second Circuit has held, as a general rule, "if [all] federal claims are dismissed before trial ..., the state claims should be dismissed as well." Motorola Credit Corp. v. Uzan, 388 F.3d 39, 56 (2d Cir. 2004), quoting Castellano v. Bd. of Trustees, 937 F.2d 752, 758 (2d Cir.1991) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130 (1966)). Here, summary judgment has been granted on all of the federal claims in this action. Moreover, because the parties are not completely diverse,[1] the court lacks subject matter jurisdiction over the remaining negligence claim and assault counterclaim. Said claims are therefore dismissed.

## IV. Conclusion

For the foregoing reasons, the motion for summary judgment by the remaining defendants, Eric Roderick and Walter Heinrich, against all plaintiffs is hereby granted. The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

DATED:   May 2, 2005
         Syracuse, New York

---

[1] According to deposition testimony of the parties, both defendant Roderick and plaintiff Olsen reside in New York. Plaintiffs Swindell and Loiacono reside in Vermont and North Carolina, respectively.

16

_____
Neal P. McCurn
Senior U.S. District Judge